IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 06-371-GPM |
| | ) |
| MERCK & CO., INC., and | ) |
| WALGREEN CO., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This action is before the Court on the motion to remand brought by Plaintiff Susan Brooks (Doc. 13). For the following reasons, the motion is **GRANTED**.

### INTRODUCTION

Plaintiff originally filed this action in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, asserting claims based upon strict products liability, negligence, consumer fraud, and breach of warranty arising from personal injuries allegedly caused by Vioxx, a prescription pain medication manufactured by Defendant Merck & Co., Inc. ("Merck"). Merck subsequently removed the action to this Court, alleging that Defendant Walgreen Co. ("Walgreens"), which is, like Plaintiff, a citizen of Illinois, has been fraudulently joined to defeat federal diversity jurisdiction. Plaintiff has requested remand of the action to Illinois state court for lack of subject matter jurisdiction.

Count VI, Count VII, and Count VIII of Plaintiff's complaint allege that Walgreens filled prescriptions for Vioxx for Plaintiff and assert, respectively, claims for sale of a defective product

sounding in strict products liability, breach of implied warranty, and negligent failure to warn against Walgreens.  Merck contends that Plaintiff has fraudulently joined Walgreens because her claims against the diversity-defeating party are barred by the "learned intermediary" doctrine under Illinois law.  Also, Merck contends that under Illinois law a sale of prescription medication does not constitute a sale of "goods" for purposes of Article 2 of the Illinois Uniform Commercial Code ("Illinois UCC").  The Court concludes that this action is due to be remanded to state court for lack of subject matter jurisdiction.

### DISCUSSION

    A.    **Merck's Request for a Stay**

In opposing Plaintiff's request for remand, Merck urges the Court to stay proceedings in this action pending transfer of the action by the Judicial Panel on Multidistrict Litigation ("JPML") to a multidistrict litigation proceeding for coordinated or consolidated pretrial proceedings.  *See* 28 U.S.C. § 1407.  As Merck acknowledges, the Court retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district, in this instance the United States District Court for the Eastern District of Louisiana.  *See Illinois Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 850 (7th Cir. 2004).  The decision to grant a stay rests within the Court's discretion.  *See Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at *1 (S.D. Ill. Apr. 21, 2006).

In *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), the court established a framework for deciding whether to address a motion to remand or to defer consideration of the motion pending transfer of an action by the JPML.  Under that framework, the court's "first step should be to make a preliminary assessment of the jurisdictional issue."  *Id*. at 1048.  If the

preliminary assessment suggests that removal was improper, then the court should consider the motion to remand. *See id*. at 1048-49. The framework set out in *Meyers* is consistent with the familiar principle that a district court's "first duty in every suit" is "to determine the existence of subject-matter jurisdiction." *Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004).

The Court's initial assessment of Plaintiff's motion for remand and the response thereto filed by Merck suggests that removal was improper. Therefore, the Court concludes that it should consider the jurisdictional issues raised by the motion for remand even though Merck is attempting to have this case transferred by the JPML. *See Illinois Mun. Ret. Fund*, 391 F.3d at 852 ("Though some district courts stay proceedings during the interim following a conditional transfer order, . . . this is not required where the court concludes that it lacks subject matter jurisdiction."); *Wisconsin v. Abbott Labs.*, No. 04-C-447-C, 2004 WL 2055717, at *1 (W.D. Wis. Sept. 9, 2004) (applying the *Meyers* framework and lifting a stay of proceedings for the purpose of considering a motion to remand, since it appeared the removal was improper, despite the JPML's conditional transfer order transferring the case). *Cf. Betts v. Eli Lilly & Co.*, Civil Action 06-0259-WS-B, 2006 WL 1523060, at *4 (S.D. Ala. June 5, 2006) (noting that "fraudulent joinder issues are particularly poor candidates for reflexive deferral" of a decision on remand by a transferor court in favor of a transferee court, given that the transferor court is likely to have greater expertise in the issues of state law presented by such claims than does the transferee court).

### B. Plaintiff's Motion to Remand

#### 1. Legal Standard

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441. *See also*

*Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000).[1]  The party seeking removal has the burden of establishing federal jurisdiction.  *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).  "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum."  *Id*.  Put another way, there is a strong presumption in favor of remand. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).  A federal court "cannot write its own jurisdictional ticket, . . . but must act within the confines of constitutional as well as statutory limits on its jurisdiction," *In re FedPak Sys., Inc.*, 80 F.3d 207, 215 (7th Cir. 1996), just as such a court has a duty to investigate its jurisdiction, independent of the representations of parties. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998); *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 135 (7th Cir. 1996).  *Cf. Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined.  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994); *Smith v. Shipping Utils., Inc.*, No. Civ. 05-500-GPM, 2005 WL 3133494, at *1 (S.D. Ill. Nov. 23, 2005).  A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts."  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  *See also Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *2 (S.D. Ill. June 6, 2006); *Katonah v. USAir, Inc.*, 868 F.

---

1.  As noted, both Plaintiff and Walgreens are Illinois citizens.  Merck is a New Jersey citizen.

Supp. 1031, 1034 (N.D. Ill. 1994). A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). *See also Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *2 (S.D. Ill. Apr. 25, 2006); *Durham v. Shiley Inc.*, No. 91 C 7999, 1994 WL 583351, at **2-3 (N.D. Ill. Oct. 21, 1994).

### 2. Fraudulent Joinder

In previous decisions the Court has expressed skepticism about whether it is proper for a drug manufacturer to assert fraudulent joinder as to a pharmacy on the basis of the learned intermediary doctrine, given that the defense is one that applies equally as between diverse defendants, in this case Merck, and non-diverse defendants, in this case Walgreens. *See, e.g., Riddle*, 2006 WL 1064070, at *3; *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 849 (S.D. Ill. 2006). This skepticism has now ripened into a firm conviction that it is not.

Under Illinois law, the learned intermediary doctrine is fundamentally a device for shifting liability for harm caused by a product, such as a prescription drug, onto doctors and away from others in the product's chain of distribution. "The learned intermediary doctrine . . . can relieve a drug manufacturer of liability for adverse effects of its drugs . . . . An adequately informed physician acts as learned intermediary between the patient and the drug manufacturer, thus breaking the chain of liability." *Ashman v. SK & F Lab Co.*, 702 F. Supp. 1401, 1404 (N.D. Ill. 1988) (applying Illinois law). *See also Koncz v. Burroughs Wellcome Co.*, No. 92 C 5797, 1994 WL 178320, at *3 (N.D. Ill. May 9, 1994) (applying Illinois law) ("The gist of the learned intermediary doctrine is that when

informed physicians make decisions to prescribe drugs to their patients, they break the chain of liability."). *Cf. Martin v. Merck & Co.*, No. S-05-750 LKK/PAN, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005) (explaining that the learned intermediary doctrine "exempts from liability those in the chain of prescription drug distribution when adequate warning has been given to physicians about the potential dangers of the medication.") (applying California law).

Under Illinois law the immunity of a pharmacist under the learned intermediary doctrine is coextensive with that of a drug manufacturer under the doctrine, on the theory that only a physician, not a manufacturer or pharmacist, possesses the specialized knowledge required to warn end-users of a prescription drug of the drug's potential danger, and that it would be unfair to impose on a pharmacist a duty higher than that owed by a manufacturer. *See Fakhouri v. Taylor*, 618 N.E.2d 518, 520 (Ill. App. Ct. 1993); *Leesley v. West*, 518 N.E.2d 758, 761-62 (Ill. App. Ct. 1988); *Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 552-53 (Ill. App. Ct. 1985). *See also* Restatement (Second) of Torts § 402A cmt. k (1965) (recognizing that prescription drugs are "[u]navoidably unsafe products" and that "[t]he seller of such products, . . . with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."). Once a manufacturer has given adequate warning of the known dangerous propensities of a prescription drug, a physician's decision to prescribe the drug becomes an issue of the physician's reasonable exercise of professional judgment. "Critical to imposing liability on physicians who prescribe drugs is their failure to communicate warnings to their patients which the manufacturer communicated to them." *AMF, Inc. v. Victor J. Andrew High*

*Sch.*, 526 N.E.2d 584, 588 (Ill. App. Ct. 1988). Correspondingly, where a manufacturer never gives adequate warning to a physician, "the learned intermediary doctrine is, if for no other reason, inapplicable." *Id*. In sum, the applicability of the learned intermediary defense in this case is one that implicates the liability of both Merck and Walgreens; provided that Merck gave adequate warning of the known dangerous propensities of Vioxx to Plaintiff's prescribing physician, neither Walgreens nor Merck is liable for Plaintiff's alleged injuries, and the case becomes essentially a matter of medical malpractice.

The Court turns from the substantive law of Illinois to the federal common law of the fraudulent joinder doctrine. In *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146 (1914), the administrator of an estate, who was a Kentucky citizen, sued a Virginia railroad company and an engineer and fireman employed by the company, who were citizens of Kentucky, for negligently killing a pedestrian at a railroad crossing. *See id*. at 149-50. The railroad sought removal of the case on the ground that the allegations of negligence against its employees were fraudulent, creating federal jurisdiction over the diverse parties, the railroad and administrator. *See id*. at 150-51. The Court observed that, under Kentucky law, employees could be held jointly liable with their employer for negligent acts committed by the employees. *See id*. at 152-53. The Court observed further that, even where a complaint alleged joint liability as among diverse and non-diverse parties, federal jurisdiction would not be defeated if a defendant seeking removal could demonstrate that non-diverse parties lacked a connection to the controversy giving rise to a case:

> A civil case, at law or in equity, presenting a controversy between citizens of different states, and involving the requisite jurisdictional amount, is one which may be removed by the defendant, if not a resident of the state in which the case is brought; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy . . . . [W]hen in such a case a resident defendant is joined with the nonresident, the joinder, even

> although fair upon its face, may be shown by a petition for removal to be only a fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly engendering that conclusion.

*Id*. at 152.

The Court concluded that the defendant railroad's allegations of fraudulent joinder failed to establish grounds for federal jurisdiction. The railroad asserted as the basis for removal merely that its non-diverse agents had not been negligent:

> The railway company's petition for removal, while not denying that the engineer and fireman were in the employ of the company, or that they were operating the train when it struck and injured the intestate, did allege that the charges of negligence (all being specifically repeated) against the defendants were each and all "false and untrue, and were known by the plaintiff, or could have been known by the exercise of ordinary diligence, to be false and untrue, and were made for the sole and fraudulent purpose of affording a basis, if possible, for the fraudulent joinder" of the engineer and fireman with the railway company, and of "thereby fraudulently depriving" the latter of its right to have the action removed into the Federal court; and that none of the charges of negligence on the part of the engineer or fireman could be sustained on the trial.

*Cockrell*, 232 U.S. at 150-51. The Court observed that, if the railroad's allegations were true, joinder of the non-diverse parties "may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, but it did not show a fraudulent joinder of the engineer and fireman." *Id*. at 153. The Court held that the allegations of fraudulent joinder, which amounted merely to an assertion that the diverse defendant's agents and thus, the diverse defendant, were not liable to the plaintiff, were simply a challenge to the merits of the case as a whole and therefore were not proper grounds for a claim of fraudulent joinder:

> As no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter, *the showing manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants*. Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were

> wrongfully brought into a controversy which did not concern them. As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company.

*Id*. (emphasis added).

In *Illinois Central Railroad Co. v. Sheegog*, 215 U.S. 308 (1909), the Court also addressed, as in *Cockrell*, a claim of fraudulent joinder in a wrongful death suit. In *Sheegog* the estate of a railroad engineer killed in a train derailment accident brought suit for negligence in Kentucky state court against the Illinois Central Railroad Company ("Illinois Central"), the engineer's employer. *See id*. at 315. Also named as defendants were the Chicago, St. Louis, and New Orleans Railroad Company, from which Illinois Central leased the track where the derailment occurred, and the conductor of the train on which the engineer was working when he was killed. *See id*. The Court detailed the plaintiff's allegations as follows:

> It was alleged that through the negligence of [the defendant railroad companies] the roadbed, track, etc., were in an improper condition; that through the negligence of the Illinois Central the engine and cars were in an improper condition; and that the death was due to these causes acting jointly, the negligence of the Illinois Central in permitting its engine, cars, and road to be operated while in such condition, and the negligence of the conductor in ordering and directing the management of the train.

*Id*.

Illinois Central petitioned the state court for leave to remove the case to federal court in diversity jurisdiction, arguing that the lessor railroad and the conductor, both of whom defeated diversity, had been fraudulently joined. *See Sheegog*, 215 U.S. at 315-16.[2] According to the Court,

---

2. Until 1948 defendants effected removal by petitioning the state court in which an action was pending for leave to remove the action to federal court. *See generally* 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice & Procedure Deskbook* § 42 (2002).

"the petition [for removal] alleged that the plaintiff had joined [the lessor railroad and the conductor] as defendants solely for the purpose of preventing the removal." *Id*. at 315. The petition for removal "admitted the lease [between Illinois Central and the lessor railroad], and averred that [Illinois Central] operated the road exclusively, and alone employed the deceased. It went on to allege that the charge of joint negligence against the lessor and lessee in causing the wreck, as stated, was made only for the . . . purpose [of preventing removal], and was fraudulent and knowingly false." *Id*. The Court concluded that, because under Kentucky law a lessor could be held jointly liable for injury caused by a lessee, Illinois Central had failed to show fraudulent joinder. *See id*. at 316-19. "If the legal effect of the [complaint] in this case is that [Illinois Central] was guilty of certain acts and omissions by reason of which a joint liability was imposed upon it and its lessor, the joinder could not be fraudulent in a legal sense on any ground except that the charge against the alleged immediate wrongdoer, [Illinois Central], was fraudulent and false." *Id*. at 316.[3]

The principle that a claim of fraudulent joinder premised on grounds that can be asserted by diverse and non-diverse defendants alike is merely a claim that a plaintiff's case "[is] ill founded as to all the defendants," *Cockrell*, 232 U.S. at 153, is called sometimes as a kind of shorthand the "common defense" rule. *See, e.g.*, 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3641 (3$^d$ ed. 1998 & Supp. 2006) (collecting cases); E. Farish Percy, *Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent*

---

3. The *Sheegog* Court noted that the plaintiff's claim against the conductor likely was barred by the "fellow-servant" rule, the common-law doctrine that an employer is not liable for an employee's injuries caused by a negligent co-worker, although the Court did not decide the issue because, having concluded the plaintiff had not fraudulently joined the lessor railroad, there was no need to do so. *See* 215 U.S. at 317. *See also* 30 C.J.S. *Employers' Liability* § 167 (1955 & Supp. 2006) (discussing the fellow-servant rule).

*Joinder*, 91 Iowa L. Rev. 189, 230-31(2005); Note, *Fifth Circuit Establishes "Common Defense" Exception to Fraudulent Joinder Doctrine*, 118 Harv. L. Rev. 1086, 1090 (2005).  Under this rule, "where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court."  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 113 (3$^d$ Cir. 1990).  *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (noting that the general test of fraudulent joinder is whether a non-diverse defendant has "no real connection with the controversy" and that "[t]here is a distinction" between an inquiry as to "whether the plaintiff truly [has] a cause of action against . . . alleged sham defendants" and "an inquiry as to whether those defendants could propound defenses to an otherwise valid cause of action."); *McKinnes v. American Int'l Group, Inc.*, 420 F. Supp. 2d 1254, 1257-58 (M.D. Ala. 2006) (applying "a 'common-defense rule' to fraudulent-joinder claims such that when a defense to liability is common to diverse and non-diverse defendants, fraudulent joinder is not found."); *McGinty v. Player*, 396 F. Supp. 2d 593, 598 (D. Md. 2005) (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004)) ("[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no [fraudulent] joinder; there is only a lawsuit lacking in merit."); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 306 (D. Mass. 2004) (holding that where fraudulent joinder is asserted on the basis of arguments that defeat the liability of both diverse and non-diverse defendants, "[s]uch arguments do not engender or compel the conclusion that the non-diverse

defendants were wrongfully brought into a controversy that did not concern them. They do not offer a legitimate reason to set apart the non-diverse defendants as 'fraudulently joined.'").

In this case it is plain that the learned intermediary doctrine applies exactly the same way as between both Merck and Walgreens. If the Court holds that Merck gave adequate warning to physicians, thus absolving Walgreens of liability, Merck is absolved of liability as well. Thus, the learned intermediary doctrine clearly is an issue that goes not to the Court's jurisdiction but to the merits of Plaintiff's claims for relief. *See Bertrand v. Aventis Pasteur Labs., Inc.*, 226 F. Supp. 2d 1206, 1213 (D. Ariz. 2002) (granting a motion to remand for lack of diversity jurisdiction in a suit removed on the grounds that certain defendants had been fraudulently joined because claims against those defendants were preempted by the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act") where the defense was equally applicable to both diverse and non-diverse defendants); *Cheskiewicz v. Aventis Pasteur, Inc.*, No. 02-3583, 2002 WL 1880524, at **2-3 (E.D. Pa. Aug. 15, 2002) (quoting *Boyer*, 913 F.2d at 113) (vaccine manufacturers who defeated diversity jurisdiction were not fraudulently joined on the grounds that claims against such manufacturers were within the exclusive jurisdiction of the federal Vaccine Court where the Vaccine Act defense was applicable to all defendants, diverse and non-diverse: "[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court."); *King v. Aventis Pasteur, Inc.*, 210 F. Supp. 2d 1201, 1210-11 (D. Or. 2002) (rejecting a claim of fraudulent joinder based on a Vaccine Act defense common to both diverse and non-diverse defendants). *See also Morrow v. Wyeth*, No. Civ.A. B-05-209, 2005 WL 2621555, at *5 n.4

(S.D. Tex. Oct. 13, 2005) (in ruling on a motion for remand, holding that the applicability of the learned intermediary doctrine under Texas law "is . . . irrelevant at this stage of the proceedings, because it goes to the merits of the case, not jurisdiction.").

Were the Court to hold that Walgreens has been fraudulently joined on the basis of the learned intermediary doctrine, this would establish the law of the case with respect to whether Merck is entitled to claim the protection of the doctrine. "[T]he phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, . . . expresses the practice of courts generally to refuse to reopen what has been decided." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). Put another way, "[t]he doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). "The law of the case doctrine . . . is not an immutable concept," *Walsh v. Mellas*, 837 F.2d 789, 796 (7th Cir. 1988), and it is not required to be followed where certain "exceptional circumstances" are present, as when new evidence mandates a ruling contrary to a prior order, controlling authority rendered since a court's original decision requires reconsideration of an order, or a prior decision in a case "was clearly erroneous, and would work a substantial injustice" if allowed to stand. *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989). Nevertheless, the presumption created by the law of the case, though only a presumption, "is not to be lightly disregarded," *Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1988), and the law-of-the-case doctrine "should be applied unless unusual circumstances or a compelling reason render it inapplicable." *Parts & Elec. Motors, Inc. v. Sterling Elec.*, 866 F.2d 228, 231 (7th Cir. 1988). *Cf. United States v. Mendez*, 102 F.3d 126, 131 (5th Cir. 1996) (quoting *White v. Murtha*, 377 F.2d

428, 431 (5th Cir. 1967)) (the law-of-the-case doctrine "creates a strong presumption of finality within the case, resting 'on the salutary and sound public policy that litigation should come to an end.'"). In this case, a ruling that Walgreens is immune from liability would be binding under the law-of-the-case doctrine as to the liability of Merck as well.

Furthermore, if after finding that Merck gave adequate warning to Plaintiff's prescribing physician, thus establishing fraudulent joinder as to Walgreens, the Court were to hold at some later stage in this litigation that Merck is not entitled to a judgment in its favor on the basis of the learned intermediary doctrine, this would be tantamount to an admission that Walgreens has not been fraudulently joined. The decision in *McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329 (5th Cir. 2004), is instructive here. In *McKee*, a passenger in a car struck by a train at a railroad crossing filed suit in state court for negligence against the railroad company that owned and operated the train and the train crew. *See id*. at 331. The railroad company removed the case to federal court, contending that the train crew had been fraudulently joined because the crew members had not been negligent. *See id*. at 331-32. The district court agreed, holding that the train crew had been fraudulently joined to defeat diversity. *See id*. at 332. Thereafter, on the railroad company's motion for summary judgment, the court denied judgment for the railroad, finding there were genuine issues for trial as to whether the accident giving rise to the case was the result of negligence. *See id*. at 332-33. At trial the jury returned a verdict for the railroad company. *See id*. at 333. On appeal, the *McKee* court vacated the district court's finding of fraudulent joinder as to the train crew, noting the "logical inconsistency in the district court's refusal to remand the case because it found that McKee had no viable claims against the train crew, and yet later refusing to grant [the railroad company's] motion for summary judgment and allowing some similar claims [to] go to trial." *Id*.

at 336. The court held that, "[a]s evidenced by the fact that the district court allowed claims which potentially depended on the negligence of the train crew go to trial against [the railroad company], McKee had potentially viable claims against the train crew and therefore there was a reason for the crew to be defendants in the case." *Id*. In this case, of course, Merck is not vicariously liable for the alleged misconduct of Walgreens, but it obviously would not be consistent to hold that Walgreens is shielded by the learned intermediary doctrine, yet Merck is not.

      The Court concludes that Merck's invocation of the learned intermediary doctrine is merely an attack on the merits of Plaintiff's claims. "To show fraudulent joinder, defendants must show a flaw specific to the joinder of the non-diverse party, which is the jurisdictionally relevant aspect of the claim." *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 475 (S.D.N.Y. 2000) (allegations that a plaintiff failed to state a prima facie case in tort were "not the type of flaws that would lead to a conclusion that [a diversity-defeating defendant] was fraudulently joined."). Showing a flaw specific to the joinder of a diversity-defeating defendant can be done by proving that, based on grounds specific to that defendant, a plaintiff has no possibility of recovery against that defendant as a matter of law. *See, e.g., Bodine's, Inc. v. Federal Ins. Co.*, 601 F. Supp. 47, 49-50 (N.D. Ill. 1984) (diversity-defeating defendants who were not parties to an insurance contract were fraudulently joined in an action seeking a declaration that an insurer owed coverage under the contract). It can also be done by presenting uncontroverted summary evidence showing that a diversity-defeating defendant has no connection to a case. *See, e.g., Rutherford*, 428 F. Supp. 2d at 848 (suggesting that fraudulent joinder as to a pharmacy would be proven if the pharmacy never dispensed a particular prescription drug to a plaintiff); *Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749, at **3-4 (N.D. Ill. Apr. 2, 1997) (in a strict products liability action based

on an allegedly defective airbag, holding that a diversity-defeating defendant whose uncontradicted affidavit showed that it never manufactured or supplied airbags to a co-defendant was fraudulently joined). However, fraudulent joinder is not shown merely by removing a case to federal court on the basis of a defense that is equally applicable to a plaintiff's claims against both diverse and non-diverse defendant, as Merck has done in this instance.

Illinois law clearly contemplates that the case-dispositive defense of the learned intermediary doctrine is one to be resolved on a full record and, in all but those instances where there is no genuine issue for trial as to the doctrine's applicability in a given case, by a jury. In *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35 (Ill. 2002), the court instructed that "the adequacy of warnings" by a drug manufacturer to a physician such as to trigger the learned intermediary doctrine "is a question of fact, not law, for the jury to determine." *Id*. at 43 (quoting *Proctor v. Davis*, 682 N.E.2d 1203, 1215 (Ill. App. Ct. 1997)). *See also Noyola v. Johnson & Johnson*, No. 85 C 2184, 1986 WL 14657, at *2 (N.D. Ill. Dec. 16, 1986) ("[U]nder Illinois law, the adequacy of warnings is ordinarily a question of fact which is inappropriate for resolution on a motion for summary judgment."); *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 483 N.E.2d 906, 911 n.2 (Ill. App. Ct. 1985) (the sufficiency of the warnings given by a drug manufacturer to a physician "is not resolved judicially by pointing to a single document or act, but remains a question to be resolved by the trier of fact in light of all the information provided by the manufacturer and all the information that it was reasonably possible to provide . . . . The trier of fact may consider warnings given by drug manufacturers to physicians to be adequate . . . or inadequate."), *rev'd on other grounds*, 513 N.E.2d 387 (Ill. 1987); *Mahr v. G. D. Searle & Co.*, 390 N.E.2d 1214, 1230 (Ill. App. Ct. 1979) ("[T]he sufficiency of form, content and intensity [of a manufacturer's warning to physicians] is not resolved

by pointing to a single document, but remains a question to be resolved by the trier of fact in the light of all the information provided by the manufacturer and all that was reasonably possible to provide."). Pertinent Illinois authority shows that the issue of the applicability of the learned intermediary doctrine to Plaintiff's claims is one to be resolved by a factfinder with a complete record before it and the power to decide the liability of all Defendants in this case in a single trial.

By contrast, this Court has no power to decide the liability of a diverse Defendant, such as Merck, in resolving a claim of fraudulent joinder to defeat diversity jurisdiction. The applicability of the learned intermediary doctrine in this case is a matter to be resolved by a court with jurisdiction to decide the issue, which is to say, an Illinois state court. Therefore, this case will be remanded to state court for lack of federal subject matter jurisdiction. *See Hauck*, 2006 WL 1596826, at \*\*5-9 (refusing to find fraudulent joinder on the basis of evidence equally dispositive of the liability of both a diverse defendant and a non-diverse defendant); *Klohr v. Martin & Bayley, Inc.*, Civil No. 05-456-GPM, 2006 WL 1207141, at \*3 (S.D. Ill. May 4, 2006) (noting that "the Court could not find fraudulent joinder on the basis of a defense equally applicable as between [a diverse defendant] and [a non-diverse defendant]."); *Simmons v. Norfolk S. Ry. Co.*, 324 F. Supp. 2d 914, 916-17 (S.D. Ill. 2004) (quoting *Cockrell*, 232 U.S. at 153) (rejecting a claim of fraudulent joinder where "[t]he showing . . . of fraudulent joinder . . . manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say it indicated that the plaintiff's case was ill-founded as to all the defendants."). *Cf. Boyer*, 913 F.2d at 113 (finding no fraudulent joinder where a defense of release was "dispositive" as to "all three defendants," and the plaintiffs' arguments that the release was invalid "involve identical legal and factual issues

applicable to the [diversity-defeating] defendants and [the removing defendant]."); *Texas E. Transmission Corp. v. Fidelity & Cas. Co. of N.Y.*, No. CIV. A. 93-15, 1995 WL 596155, at *8 (E.D. Pa. Oct. 6, 1995) (the court could not resolve the validity of affirmative defenses asserted by various diverse and non-diverse parties without resolving the merits of the case); *Rosario v. Waterman S.S. Corp.*, 158 F. Supp. 537, 538 (S.D.N.Y. 1957) ("Where . . . jurisdictional facts in issue are also essential elements of the claim on the merits, this Court must act with care so that in determining the issue of jurisdiction it does not, in effect, deprive plaintiff of his usual right to have the merits of his claim decided in the forum of his choice.").[4]

### 3. Costs and Expenses under 28 U.S.C. § 1447(c)

Plaintiff requests an award of costs and expenses pursuant to 28 U.S.C. § 1447, which provides, in pertinent part, "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704 (2005), the Court held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 711. This Court concludes in its discretion that an award pursuant to section 1447(c) is not appropriate in this case. There is no evidence here that this case was removed for the purpose of prolonging litigation or increasing Plaintiff's costs in prosecuting the case. Although the Court ultimately found unpersuasive Merck's arguments for removal, the removal was not objectively unreasonable. *See Hauck*, 2006

---

4. Because the Court declines to find fraudulent joinder on the basis of the learned intermediary doctrine, the Court need not reach the issue of whether Plaintiff has asserted a viable claim against Walgreens for breach of warranty under the Illinois UCC. The Court notes that, in prior decisions, it has held that this issue is an ambiguous question of state law that must be resolved against a finding of fraudulent joinder and in favor of remand. *See, e.g., Riddle,* 2006 WL 1064070, at **5-6.

WL 1596826, at *10; *Orbitz, LLC v. Worldspan, L.P.*, 425 F. Supp. 2d 929, 933 (N.D. Ill. 2006); *Impact Gel Corp. v. Rodeen*, No. 05-C-223-C, 2005 WL 3555422, at *2 (W.D. Wis. Dec. 27, 2005). Therefore, the Court will deny Plaintiff's request an award of costs and expenses, including attorney fees.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (Doc. 13) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of federal subject matter jurisdiction. Plaintiff's request for an award of attorney fees pursuant to 28 U.S.C. § 1447(c) is **DENIED**.

**IT IS SO ORDERED.**

DATED: 7/31/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge